NUMBER 13-02-446-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH PA, AND INDUSTRIAL 
RISK INSURERS,                                                                       Appellants,
v.
JOHN ZINK COMPANY; FISHER CONTROLS COMPANY,
INC.; FISHER CONTROLS INTERNATIONAL, INC.;
FISHER CONTROLS INSTALLATION AND SERVICE
COMPANY; AND VALTEK, INC.,                                                Appellees.



On appeal from the 117th District Court
of Nueces County, Texas.




                                  MEMORANDUM OPINION

     Before Chief Justice Valdez and Justices Rodriguez and Garza

                             Opinion by Chief Justice Valdez
          Appellants, National Union Fire Insurance Company of Pittsburgh, PA. and
Industrial Risk Insurers (“IRI”), appeal from the judgment of the trial court granting
summary judgment in favor of appellees, John Zink Company (“Zink”), Fisher Controls
Company, Inc., Fisher Controls International, Inc., Fisher Controls Installation and
Service Company (collectively “Fisher”), and Valtek, Inc. Because the trial court
granted more relief than was requested, and because a genuine issue of material fact
remains unresolved, we reverse and remand.
Background
         The underlying dispute in this case involves two unrelated incidents at the
Valero Energy Corporation’s refinery in Corpus Christi, Texas. In 1979, Valero began
a $500 million expansion of its refinery. The general contractor, M.W. Kellogg
Construction Company, agreed to design, engineer, provide procurement services for
and coordinate construction of the project. During the expansion, a Valtek-manufactured by-pass valve, a Zink brand air preheater, and a Fisher brand computer
control system were installed at the refinery. 
         Subsequent to the completion of the expansion project, there was an explosion
at the refinery in 1984, followed by a separate, unrelated fire in 1985. Both the
explosion and fire caused substantial damage to the refinery and became the basis for
a lawsuit by Valero against its former contractor Kellogg. See Valero Energy Corp. v.
Kellogg Constr. Co., 866 S.W.2d 252, 254 (Tex. App.–Corpus Christi 1993, writ
denied); Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 205 (Tex.
1999).
         The present case was initiated when Valero’s insurers, National Union and IRI,
brought subrogation claims against Zink, Fisher, Valtek, and several other parties. The
trial court granted the defendants’ motions for summary judgment, which this Court
reversed and remanded. See Nat’l Union Fire Ins. Co. of PA v. John Zink Co., 972
S.W.2d 839, 848 (Tex. App.–Corpus Christi 1998, pet. denied). On remand, trial was
set and appellees Zink, Fisher and Valtek filed new motions for summary judgment
which are now the subject of this appeal. National Union and IRI (collectively
“appellant-insurers”) filed a cross-motion for partial summary judgment and special
exceptions. The trial court granted the appellees’ motions for summary judgment, and
expressly denied appellant-insurers’ cross-motion and special exceptions.
         On appeal, appellant-insurers complain (1) the trial court erred in granting
appellees’ motions for summary judgment; (2) the trial court erred by denying
appellant-insurers’ cross-motion for partial summary judgment; (3) the trial court erred
by denying appellant-insurers’ special exceptions, objections, and motions to strike;
(4) the trial court erred in denying appellant-insurers’ motions for leave to file additional
summary judgment evidence; (5) the trial court erred in granting final judgment for Zink
and Fisher; and (6) the trial court erred in granting final summary judgment for
appellees when fact issues exist as to each of appellees’ defenses. Appellees respond
by arguing that the trial court failed to enter a final judgment, and therefore, this Court
lacks jurisdiction to hear this appeal. 
Finality of Judgment
         We first address the issue of the finality of the trial court’s judgment.


 A
judgment must be final before it can be appealed. See Lehmann v. Har-Con Corp., 39
S.W.3d 191, 192 (Tex. 2001). A judgment issued without a conventional trial – for
example, a judgment rendered on a pre-trial motion for summary judgment – is final
for purposes of appeal if and only if it actually disposes of all claims and parties then
before it.  Id.; see also Lopez v. Sulak, 76 S.W.3d 597,603 (Tex. App.–Corpus Christi
2002, no pet.). Otherwise, the judgment is only interlocutory. Lehmann, 39 S.W.3d
at 192.
         Complications in determining the finality of judgment may arise even when the
judgment of the trial court both includes language of finality and purports to grant
complete relief. Id. at 205. For example, an order granting a motion for summary
judgment that addressed all of the plaintiff’s claims as of the date it was filed but does
not address claims added after the summary judgment motion was filed may state
unequivocally that final judgment is rendered that the plaintiff take nothing by his suit. 
Id. at 204. Such an order grants more relief than a movant is entitled to receive from
his motion. Granting more relief than the movant is entitled to makes the order
reversible, but not interlocutory. Id. 
         Here, appellees filed their motions for summary judgment after appellant-insurers
filed their sixth amended petition. Appellant-insurers then filed their seventh amended
petition which raised additional claims against Zink and Fisher.


 The trial court granted
Zink and Fisher’s motions, declaring its decision to be a final judgment and ordering
that appellant-insurers take nothing by their claims. 
         Appellant-insurers argue in their first and fifth issues on appeal that because
neither Zink nor Fisher raised grounds for summary judgment on any of appellant-insurers’ later-added claims, it was error for the trial court to enter final judgment in
favor of those parties. However, appellant-insurers do not assert that this judgment
was interlocutory. Appellees Zink and Fisher, in their appellate briefs and in Fisher’s
separately filed “Motion to Dismiss Appeal for Lack of Jurisdiction,” allege that this
Court lacks jurisdiction to hear this appeal because the judgment entered by the trial
court did not dispose of all claims and causes of action asserted by appellant-insurers
and therefore is interlocutory and unappealable. 
         We agree with appellant-insurers. Appellees’ motions for summary judgment
pre-dated and therefore could not respond to the additional claims raised by appellant-insurers in the seventh amended petition. The order entered by the trial court, which
ruled that plaintiffs National Union and IRI take nothing on any of their claims,
effectively granted more relief than was requested by appellees in their motions for
summary judgment. It was error for the trial court to grant a final judgment based in
part on claims not properly before it at the summary judgment hearing, see id. at 204,
and thus we sustain appellant-insurers’ first and fifth issues as it relates to Fisher and
Zink. Accordingly, we reverse and remand on the issue of Zink and Fisher’s liability
under the claims added to appellant-insurers’ seventh amended petition. We also deny
Fisher’s related motion to dismiss the appeal for lack of jurisdiction, as the judgment
of the trial court is reversible but not interlocutory.
Summary Judgment
A. Standard of Review
         By their first and sixth issues on appeal, appellant-insurers allege that the trial
court erred in granting appellees’ motions for summary judgment, as genuine issues
of material fact had yet to be resolved. 
         Appellees raised both traditional and no-evidence grounds for summary
judgment. This Court reviews summary judgments de novo. See Tex. Commerce
Bank-Rio Grande Valley, N.A. v. Correa, 28 S.W.3d 723, 726 (Tex. App.–Corpus
Christi 2000, pet. denied). We take as true all evidence favorable to the non-movant
and indulge every reasonable inference in the non-movant's favor. See Spates v. Wal-Mart Stores, Inc., 144 S.W.3d 657, 661 (Tex. App.–Corpus Christi 2004, no pet.). 
When the trial court's order granting summary judgment does not specify the grounds
relied upon, we must affirm if any of the theories advanced are meritorious. See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).
         To prevail on a traditional motion for summary judgment, the moving party has
the burden of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995) (per curiam). A no-evidence summary judgment asserts
there is no evidence of one or more essential elements of claims upon which the
opposing party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). A no-evidence motion for summary judgment is properly granted only if the non-movant fails
to bring forth more than a scintilla of probative evidence raising a genuine issue of
material fact as to the challenged element of the claims. See id.; AMS Constr. Co. v.
Warm Springs Rehab. Found., 94 S.W.3d 152, 159 (Tex. App.–Corpus Christi 2002,
no pet.).
         The previous decision from this Court stemming from the same underlying
litigation, National Union, held that because Valero’s insurance claims against appellees
were not expressly addressed by appellees’ motions for summary judgment, the trial
court erred by granting complete relief to appellees. See Nat’l Union, 972 S.W.2d.
at 845. In particular, appellees had failed to explain whether appellant-insurers had
asserted any independent claims against them apart from their liability to Valero,
whether they should be treated as sub-contractors under the Valero-Kellogg contract,
and why the waiver of liability in the Valero-Kellogg contract should trump the
individual waivers of liability in the Zink and Fisher purchase orders. See id. In
response, appellees amended and re-asserted their motions for summary judgment, this
time addressing Valero’s insurance claims, subrogation rights and status under the
terms of the contract. The trial court subsequently granted these motions.
         Appellant-insurers’ seventh amended petition does not assert independent
claims that arise from appellant-insurers’ own status, but rather only asserts that
appellees breached duties owed to Valero, which they now assert on Valero’s behalf
as its insurers. Therefore, we can appropriately apply the previous decisions from this
Court that address the liability of Valero under its contract with Kellogg. See Eagle
Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1990) (concluding
collateral estoppel for issues previously litigated is binding on a party and those in
privity with him); see also Espeche v. Ritzell, 123 S.W.3d 657, 667 (Tex.
App.–Houston [14th] Dist. 2003, pet. denied) ("Privity exists if the parties share an
identity of interests in the basic legal right that is the subject of the litigation."). 
B. Subcontractor Liability
         Appellant-insurers’ claims against appellees involve assertions of negligence,
products liability, and breach of contract. Appellees moved for summary judgment on
all claims, alleging as an affirmative defense that these claims are barred by the terms
of the contract between Valero and Kellogg and that appellant-insurers are estopped
from asserting them by the prior holding of this Court in Valero, 866 S.W.2d at 258. 
On appeal, appellant-insurers argue that appellees never provided evidence that they
were sub-contractors to Kellogg and therefore entitled to assert these defenses.          The Valero-Kellogg contract includes a provision allocating liability between the
parties. The relevant language of this provision provides that:
[Valero] shall release, defend, indemnify and hold harmless [Kellogg], its
subcontractors and affiliates and their employees performing services
under this Agreement against all claims, liabilities, loss or expense . . .
including losses attributable to [Kellogg’s] negligence . . . 
 
Neither [Kellogg] nor its affiliates nor its subcontractors or vendors, either
individually or jointly shall be liable to [Valero] or its affiliates, irrespective
of whether alleged to be due to negligence or otherwise . . . .

         The contract on its face absolves Kellogg and its sub-contractors from all liability
against “all claims” beyond what is covered by Kellogg’s own insurance. 
         This Court has previously considered the liability of Kellogg’s sub-contractors
for damages resulting from the Valero refinery fire and explosion under the Valero-Kellogg contract:
Parties may agree to exempt one another from future liability for
negligence so long as the agreement does not violate the constitution, a
statute, or public policy. When the parties to the contract are private
entities bargaining from positions of substantially equal strength, the
agreement is usually enforced. . . . Valero and Kellogg are sophisticated
entities, replete with learned counsel and a familiarity with the oil refinery
industry. . . . Valero, having a bargaining power equal to Kellogg's,
agreed to the exculpatory clause in this contract. Valero possessed the
resources necessary to ascertain and understand the rights it held on the
date of the signing of the contract, and those it would hold in the future.
Nevertheless, Valero, of its own accord, negotiated those rights away.
 
The waiver and indemnity provision absolving Kellogg of all liability
sounding in products liability and gross negligence does not offend public
policy.
 
Similarly, Ingersoll-Rand, as one of Kellogg's subcontractors, is also
addressed in the Valero/Kellogg contract as an entity entitled to
protection under the waiver and hold-harmless clauses. As such, it, too
is held harmless and is indemnified under the contract fairly negotiated
between Kellogg and Valero. 
 
Valero, 866 S.W.2d at 257-58 (citations omitted, emphasis added). Thus, we find
that the issue of sub-contractor liability under the Valero-Kellogg contract has been
previously decided by this Court. Appellant-insurers, as insurance providers whose
claims against appellees derive from Valero’s claims against Kellogg’s subcontractors,
are therefore estopped from reasserting these claims here. See Nat’l Union, 972
S.W.2d at 844 (“The subrogees stand in the shoes of the one whose rights they claim,
and the extent of the subrogees’ remedy and the measure of their rights are controlled
by those possessed by the subrogor.”). The remaining issue the trial court faced was
whether appellees could benefit from this prior holding by claiming that they were
qualified to claim the status of “subcontractor” to Kellogg. 
         A subcontractor is defined as a party who takes and performs a portion of a
contract from a principal contractor or who enters into a contract for the performance
of an act with a person who has already contracted for its performance. See Tex.
United Ins. Co. v. Burt Ford Enter., Inc., 703 S.W.2d 828, 832 (Tex. App.–Tyler
1986, no writ); Black’s Law Dictionary 1424 (6th ed. 1990). 
         Appellees Zink, Fisher and Valtek all claimed to be subcontractors to Kellogg. 
We first address the claims of Zink and Fisher. Attached to its motion for summary
judgment, appellee Zink provided substantial documentation establishing its
subcontractor status, including its bid to provide the air heater, and Kellogg’s
subsequent acceptance of the bid in a purchase order. This evidence serves to
establish that a contract was entered into between Kellogg and Zink for a part of the
Valero refinery expansion project that Kellogg had already contracted to perform. See
Tex. United Ins. Co., 703 S.W.2d at 832; see also Hardin Constr. Group v. Strictly
Painting, 945 S.W.2d 308, 313 (Tex. App.–San Antonio 1997, no writ) (holding that
letter from one party coupled with substantial performance by that party bound party
to contract as subcontractor). 
         Appellee Fisher has also provided substantial evidence of a similar nature: the
record includes an “inquiry” from Kellogg regarding the computer control system, a bid
from Fisher in response, and acceptance of the bid from Kellogg in the form of a
purchase order. Thus, the evidence attached to Zink and Fisher’s motions for
summary judgment conclusively establishes that they were in fact subcontractors to
Kellogg and could benefit from Valero’s waiver of liability to Kellogg and its
subcontractors for the refinery expansion project. See Tex. United Ins. Co., 703
S.W.2d at 832. The trial court therefore did not err in granting Zink and Fisher’s
motion for summary judgment on these grounds.



         Appellant-insurers also assert in their petition that appellees Zink and Fisher are
liable to Kellogg and Valero for breach of warranties and guarantees they specifically
made in the terms of the purchase orders they signed, which state that appellees “shall
defend and hold [Kellogg and Valero] harmless . . . for loss of and/or damage to
property caused in whole or in party by the negligence or willful acts of [appellees] in
connection with the Materials furnished hereunder, including without limitation, the
installation, erection, repair, adjustment or operation thereof. . .“ However, these
purchase orders were signed in June 1981, and the Valero-Kellog contract, which
expressly waived liability for Kellogg and its subcontractors, was signed in May 1982. 
When parties have concluded a valid integrated agreement with respect to a particular
subject matter, the parol evidence rule precludes the enforcement of inconsistent prior
or contemporaneous agreements. Weinacht v. Phillips Coal Co., 673 S.W.2d 677,
679 (Tex. App.–Dallas 1984, no writ). As there was no subrogation by Kellogg to
appellant-insurers of any claim it could pursue against its subcontractors, we find the
provisions for liability discussed in the Zink and Fisher purchase orders were pre-empted by the express waiver of liability for Kellogg’s subcontractors in the later-signed Valero-Kellogg contract. See id.
         We now turn to the status of Valtek. Appellant-insurers’ claims against Valtek
focus on Valtek’s actions as a manufacturer and seller of industrial valves. Valtek, in
its motion for summary judgement, provided no evidence of any contractor-subcontractor or contractor-vendor relationship between itself and Kellogg. The
evidence Valtek produced in support of its motion for summary judgment focuses only
on the testing and reliability of the valve involved in the refinery incidents. Valtek is
seeking to absolve itself of liability by demonstrating not that it was a subcontractor
but rather that it was not negligent and its valve was not defective. In all of Valtek’s
summary judgment evidence, Kellogg is only mentioned in a reply to an interrogatory
from appellant-insurers: “the valve met the requirements supplied by [Kellogg] for the
designated service.” The other appellees provided signed agreements, invoices and
purchase orders demonstrating an offer and acceptance occurred between themselves
and Kellogg. Valtek, beyond bare assertions in its motion for summary judgment, did
not provide any evidence to indicate that it had a business relationship with Kellogg
such that it could be considered Kellogg’s subcontractor for purposes of the Valero-Kellogg project. Kellogg could have acted as an intermediary setting mechanical
specifications for a product sold by Valtek to Valero, or Valtek could have sold to
Kellogg simply as a merchant, with no intent to be considered a subcontractor under
the Valero contract. The evidence does not support any particular interpretation of the
Valtek-Kellogg relationship. Thus, Valtek’s status as a sub-contractor is an unresolved
issue of material fact. Accordingly, it was error for the trial court to grant summary
judgment for Valtek on these grounds. We sustain appellant-insurers’ issue only as it
relates to Valtek and reverse and remand to the trial court for further proceedings. 
Motion for Partial Summary Judgment
         In their second issue, appellant-insurers seek review of their cross-motion for
partial summary judgment. This Court may address cross-motions for summary
judgment so long as both parties have sought final judgment relief in their motions. 
CU Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998); Krishnan v. Law
Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 303 (Tex. App.–Corpus Christi
2002, pet. denied); see also Faulkner v. Bost, 137 S.W.3d 254, 261 (Tex. App.–Tyler
2004, no pet.) (“Before a court of appeals may review an order denying a cross-motion
for summary judgment not covered by an interlocutory appeal statute, both parties
must have sought final judgment in their motions.”). Because appellant-insurers have
not filed a final summary judgment motion, we cannot render judgment at this time. 
See Krishnan, 83 S.W.3d at 303. Appellant-insurers’ second issue is overruled.
Special Exceptions
         By their third issue on appeal, appellant-insurers allege the trial court erred in
denying their special exceptions, objections, and motions to strike and in granting
appellees’ special exceptions, objections and motions to strike. Appellant-insurers
failed to include analysis of this complaint in their brief, and instead request that they
be allowed to file briefs addressing this issue if we did not reverse the judgment
below. As we have reversed part of the judgment below, we decline to allow
appellant-insurers further opportunity to brief this complaint on appeal. See Tex. R.
App. P. 38.9(b).
Summary Judgment Evidence
         In their fourth issue, appellant-insurers allege that the trial court erred in denying
their motions for leave to file additional summary judgment evidence and further
responses. Appellant-insurers’ brief and reply brief, however, fail to address this issue
beyond simply listing it among the “Issues Presented.” There is no analysis of the
legal or factual issues involved nor any citation to relevant authority. See Tex. R. App.
P. 38.1. Therefore, appellant-insurers have waived our consideration of fourth issue
due to their inadequate briefing. See Sunnyside Feedyard v. Metro. Life Ins. Co., 106
S.W.3d 169, 173 (Tex. App.–Amarillo 2003, no pet.).
Conclusion
         We sustain, in part, appellant-insurers’ first and sixth issues on appeal, and we
accordingly reverse and remand the trial court’s order granting Valtek’s motion for
summary judgment. We also reverse the trial court’s order granting summary
judgment for Fisher and Zink and remand for consideration of the newly-added issues
not addressed in their motions.


 
          


                                                                                                                   
                                                                        Rogelio Valdez,
                                                                        Chief Justice

 

Memorandum Opinion delivered and filed
this 17TH day of March, 2005.